IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER ODDO, et al., : | |
| Plaintiffs, : | |
| : | |
| v. : | Civ. No. 17-4775 |
| : | |
| BIMBO BAKERIES U.S.A., INC., et al., : | |
| Defendants. : | |

## ORDER

Plaintiffs Christopher Oddo, Philip Brucato, and Michael Lennon, on behalf of themselves and those similarly situated, allege that Defendant Bimbo Bakeries U.S.A., Inc. and Does 1 through 10 violated the Fair Labor Standards Act and the New Jersey Wage and Hour Law. (Doc. No. 11); 29 U.S.C. § 201 *et seq.*; N.J.S. § 34.11-56a *et seq.* BBUSA has moved for summary judgment against the named Plaintiffs. (Doc. No. 62.) The matter has been fully briefed. (Doc. No. 66, 69.) I will deny BBUSA's Motion.

### I.  FACTUAL BACKGROUND

I have construed the facts in the light most favorable to Plaintiffs and made all reasonable inferences in their favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).

BBUSA is a Pennsylvania company that bakes, sells, and distributes baked goods throughout the United States. (DeChristofano Decl. ¶ 3, Doc. No. 62-3.) The Company ships fresh baked products every week. (Id. at ¶ 11.) BBUSA Route Sales Representatives use commercial motor vehicles to transport BBUSA products to distribution centers and sales depots, often crossing state lines. (Id. at ¶¶ 2, 7, 12, 14.)

Plaintiffs are three current and former BBUSA RSRs in New Jersey who regularly drove BBUSA trucks to deliver and stock BBUSA products. (See Brucato Decl. ¶ 3, Doc. No. 66-3; Lennon Decl. ¶ 3, Doc. No. 66-5; Oddo Decl. ¶ 2, Doc. No. 66-4; see also Def.'s Mem. Law Supp.

Renewed Mot. Summ. J., 3 n.3, Doc. No. 62-2 (Brucato is now deceased).)

From July 2013, the earliest date within the three-year limitations period, to July 2016, Plaintiffs primarily drove BBUSA trucks with a Gross Vehicle Weight Rating greater than 10,000 pounds. (See Exs. F–H to DeChristofano Decl., Doc. No. 62-4 (GVWR and fueling records); Brucato Decl. ¶¶ 8–9; Lennon Decl. ¶¶ 6–7; Oddo's Am. Resp. to Def's Second Set of Interrogs. 1–2, Doc. No. 66-6); see also 29 U.S.C. § 255(a) (establishing maximum three-year limitations period for FLSA violations). Plaintiffs occasionally, however, drove smaller BBUSA trucks. (See Ex. H to Pl.'s Br. Opp'n to Def.'s Mot. Summ. J., Doc. No. 66-8 (summarizing Plaintiffs' small vehicle usage).)

Viewed in Plaintiffs' favor, fuel cards show that: (1) Lennon drove a smaller BBUSA truck in 9 out of 120 workweeks; (2) Brucato drove a smaller BBUSA truck in 4 out of 256 workweeks; and (3) Oddo drove a smaller BBUSA truck in 3 out of 289 workweeks. (See id.; Exs. F–H to DeChristofano Decl.; see also Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶¶ 20–25, Doc. No. 66-1 (although BBUSA states that Lennon worked 181 weeks during the relevant period, Plaintiffs state that he worked 120 weeks because of "vacation and other reasons").) It is undisputed that these records adequately capture Plaintiffs' use of smaller BBUSA trucks. (See also Brucato Decl. ¶¶ 14–17 ("I used [a BBUSA] fuel card to refuel only the trucks driven by me on the route; I always used the fuel card to refuel my truck while I was out on my route delivering Defendant's products; [] I could work seven (7) days before I had to refuel one of the smaller box trucks."); Lennon Decl. ¶¶ 8–13 (same); Oddo Decl. ¶¶ 4–8 (same).) Lennon also recalls using "a personal vehicle to deliver BBUSA products . . . once or twice during the last three to five years," but cannot remember the specific dates or workweeks. (See Lennon's Second Am. Resp. to Def.'s Second Set of Interrogs. 2, Doc. No. 66-7.)

2

Plaintiffs also allege that before July 2013, they always used smaller BBUSA trucks to deliver products. (See Brucato Decl. ¶ 5; Lennon Decl. ¶ 5; Oddo Decl. ¶ 3.) Whether Plaintiffs used small vehicles before July 2013 is irrelevant for purposes of this Motion, however, because such dates fall outside the maximum limitations period, and Plaintiffs have presented no grounds for equitable tolling. See Guenzel v. Mount Olive Bd. of Educ., No. 10-4452, 2012 WL 556256, at *2 (D.N.J. Feb. 16, 2012) ("Because each FLSA violation gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event." (citation omitted)); see also Podobnik v. United States Postal Serv., 409 F.3d 584, 591 (3d Cir. 2005) (equitable tolling is appropriate: (1) "where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision"; (2) "where the plaintiff in some extraordinary way has been prevented from asserting his rights"; or (3) "where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum"), abrogated on other grounds by Rotkiske v. Klemm, 890 F.3d 422 (3d Cir. 2018) (en banc).

During the relevant period, Plaintiffs received a base salary and commissions. Plaintiffs often worked more than 40 hours a week, but did not receive overtime compensation. (See, e.g., Oddo's Am. Resp. to Def.'s Second Set of Interrogs. 1; Lennon's Second Am. Resp. to Def.'s Second Set of Interrogs. 1–2; see also Lennon's Time R., Ex. F. to Pl.'s Br. Opp'n to Def.'s Mot. Summ. J., Doc. No. 68.)

## II.     PROCEDURAL HISTORY

On July 13, 2016, Plaintiffs filed the instant action, on behalf of themselves and other similarly-situated individuals, against BBUSA and Does 1 through 10 in the United States District Court for the District of New Jersey, seeking overtime under the FLSA and the NJWHL. (Doc.

No. 1-1); 29 U.S.C. § 201 *et seq.*; N.J.S. § 34.11-56a *et seq*. On October 23, 2017, the Parties stipulated to transfer the case to this Court. (Doc. No. 1-32.) On October 25, 2017, the case was assigned to me. (Doc. No. 1.) On November 7, 2017, Plaintiffs filed an Amended Complaint, adding Plaintiff Charles Marvasso and a new claim under the Pennsylvania Minimum Wage Act. (Doc. No. 11); 43 P.S. § 333.101, *et seq*.

BBUSA promptly moved for summary judgment, arguing that Plaintiffs were exempt from overtime under the Motor Carrier Exemption. (Doc. No. 17.) Plaintiffs opposed and filed a Motion to Certify a Conditional Class Action. (Doc. Nos. 27, 38.) On October 18, 2018, I denied the Parties' Motions without prejudice and ordered additional discovery. (Doc. No. 54.)

On January 24, 2019, the Parties stipulated to dismiss Marvasso's FLSA claim and the PMWA claim. (Doc. No. 59.) On January 28, 2019, BBUSA renewed its Motion for Summary Judgment against the remaining Plaintiffs. (Doc. No. 62.) The matter has been fully briefed. (Doc. Nos. 66, 69.)

### III. LEGAL STANDARD

I may grant summary judgment "if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must initially show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An issue is material only if it could affect the suit's result under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). I "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh, 418 F.3d at 267. The opposing party must support each essential element with concrete evidence in the record. See Celotex, 477 U.S. at 322–23. If I then determine that there is no genuine issue of material fact, summary judgment is appropriate. See id. at 322.

## IV. DISCUSSION

### A. Fair Labor Standards Act

Under the FLSA, employers must pay overtime to non-exempt employees who work more than 40 hours in a given week. 29 U.S.C. § 207. It is undisputed that Plaintiffs fall within the Motor Carrier Exemption, which exempts from overtime:

> employee[s] . . . who: (1) [a]re employed by [a motor carrier or motor private carrier] whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2; see also Carley v. Crest Pumping Tech., LLC, 890 F.3d 575, 579 (5th Cir. 2018) ("[T]he purpose of the MCA exemption was primarily to ensure that operators of vehicles affecting highway safety were regulated by an entity with a greater understanding of the particular safety concerns": i.e., the Secretary of Transportation (citation omitted)). Indeed, the Parties agree that BBUSA is a motor private carrier, and Plaintiffs' duties as BBUSA drivers affect the safety of operation of motor vehicles in transportation in interstate commerce. See 49 U.S.C. § 13102(15) (a "motor private carrier" is "a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is [across state lines]; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise"); see also Cerutti v. Frito Lay, Inc., 777 F. Supp. 2d 920, 926 (W.D. Pa. 2011) ("Generally, '[t]he duties of drivers affect safety of operation, so drivers employed by motor carriers covered by the Motor Carrier Act are subject exclusively to the authority of the Secretary of Transportation.'" (citation omitted)).

Plaintiffs nevertheless argue that because they occasionally drove smaller BBUSA trucks, they fell within the "Small Vehicle Exception" to the Motor Carrier Exemption, which requires

5

employers to provide overtime if the employee's work:

> *in whole or in part*, is . . . that of a driver, driver's helper, loader, or mechanic . . . affecting the safety of operation of motor vehicles [with a GVWR of] 10,000 pounds or less in transportation on public highways in interstate or foreign commerce . . . . , and [the employee] performs duties on motor vehicles [with a GVWR of] 10,000 pounds or less.

Tech. Corr. Act, 122 Stat. 1572 § 306(c) (2008) (emphasis added).

The Third Circuit has held that drivers who work on "mixed fleets"—both small vehicles and commercial vehicles—qualify for the Small Vehicle Exception. See McMaster v. E. Armored Servs., Inc., 780 F.3d 167, 169–72 (3d Cir. 2015); see also Schilling v. Schmidt Baking Co., 876 F.3d 596, 601 (4th Cir. 2017) ("The text of the TCA plainly provides that employees working on mixed fleet vehicles are covered by the TCA exception."). Neither Congress, the Departments of Transportation or Labor, the Third Circuit, or any other Circuit, however, has given a firm meaning to the term "in part." See McMaster, 780 F.3d at 170 n.4 ("Whatever 'in part' means, it is certainly satisfied by [the plaintiff], who spent 49% of her days on vehicles less than 10,000 pounds."); see also Schilling, 876 F.3d at 602 ("in part" satisfied by "plaintiffs [who] spent the majority of their working hours making deliveries, and between 70% and 90% of their delivery trips were made on vehicles indisputably weighing less than 10,000 pounds").

It is undisputed that Plaintiffs drove "mixed fleets" during the relevant period. BBUSA nevertheless argues that Plaintiffs are ineligible for the Small Vehicle Exception because they drove small trucks only rarely: i.e., 7.5%, 1.5%, and 1% of the relevant period. (Def.'s Mem. Law Supp. Renewed Mot. Summ. J. 14–16; Def.'s Reply Mem. Law Further Supp. Mot. Summ. J. 11, Doc. No. 69.) Plaintiffs do not dispute these figures, but argue that BBUSA's proposed "de minimis" standard is inappropriate because a week-by-week analysis is required, and they are entitled to overtime for the weeks in which they used small vehicles. (Pl.'s Br. Opp'n to Def.'s Mot. Summ. J. 8–13, Doc. No. 66.)

*The Small Vehicle Exception Includes a De Minimis Threshold*

"There seems to be general consensus [among district courts] that 'in order [for the Small Vehicle Exception to apply], an employee must (1) perform *some work* that affects the safety of operation of small vehicles, and (2) it must be part of the employee's duties to so, where 'some work' must at least rise above the level of *de minimis* work . . . ." See Morgan v. Rig Power, Inc., No. 15-073, 2017 WL 11017230, at *15 (W.D. Tex. Sept. 1, 2017); Childress v. Ozark Delivery of Mo., 95 F. Supp. 3d 1130, 1137 (W.D. Mo. Mar. 5, 2015) (citing cases); see also Mayan v. Rydbon Exp., Inc., No. 07-2658, 2009 WL 3152136, at *9 n.12 (E.D. Pa. Sept. 30, 2009) ("Each employee's work hours and duties must be considered to ensure that his work with motor vehicles weighing 10,000 pounds or less is more than *de minimis*."). The Department of Labor and several district courts have indicated that the Exception applies on a week-by-week basis. See U.S. Dep't of Labor, Wage & Hour Div., Field Assistance Bulletin No. 2010-2 (Nov. 2010); U.S. Dep't of Labor, Wage Div., Fact Sheet # 19 (Nov. 2009); see also Crow v. ProPetro Servs., Inc., No. 15-149, 2016 WL 9776367, at *6 (W.D. Tex. Sept. 27, 2016); Pearson v. Trinity Armored Sec., Inc., No. 13-281, 2014 WL 12531275, at *9 (N.D. Tex. Sept. 3, 2014); accord. Cerutti, 777 F. Supp. 2d at 937 (although DOL bulletins—as distinguished from DOT bulletins—are entitled to diminished interpretive weight in this context, they still must be considered).

Plaintiffs argue that imposing a *de minimis* bar before awarding week-by-week overtime "lead[s] to [an] absurd result[]": i.e., whether "mixed-fleet" drivers qualify for overtime—when their small vehicle usage fluctuates—will depend on when they file a lawsuit. (Pl.'s Br. Opp'n to Def.'s Mot. Summ. J. 13–17.) There is nothing absurd, however, about calculating overtime based on the number of eligible hours worked during the applicable limitations period. Cf. Henchy v. City of Absecon, 148 F. Supp. 2d 435, 437 (D.N.J. 2001) ("It is well settled that '[a] separate cause

7

of action for overtime compensation accrues at each regular payday immediately following the work period during which the services were rendered and for which the overtime compensation is claimed.'" (citation omitted)); see also Morataya v. Nancy's Kitchen of Silver Spring, Inc., No. 13-01888, 2015 WL 4459387, at *7 (D. Md. July 17, 2015) ("The amount Plaintiff is owed will depend on the number of hours worked and the applicable statute of limitations."). Moreover, most courts that have applied the Small Vehicle Exception on a week-by-week basis have *still* considered the extent of drivers' small vehicle usage before ruling that the Small Vehicle Exception applies. See, e.g., Byers v. Care Transport, Inc., No. 13-15174, 2015 WL 5608287, at *8 (E.D. Mich. Sept. 24, 2015) ("[W]here an employee combines more than *de minimus* work involving a vehicle provided for in the small vehicle exception with work involving a vehicle not covered by that exception, the employee is entitled to overtime pay under the FLSA, at least during weeks where there is such combined work."); Hernandez v. Alpine Logistics, No. 08-6254, 2011 WL 3800031, at *5–8 (W.D.N.Y. Aug. 29, 2011) (plaintiffs who spent "the majority of driving hours" in vehicles less than 10,000 pounds were entitled to overtime in weeks that they used small vehicles); see also Heng Guo Jin v. Han Sung Sikpoom Trading Corp., No. 13-6789, 2015 WL 5567073, at *7–8 (E.D.N.Y. Sept. 21, 2015) (Small Vehicle Exception applies on week-by-week basis, but finding "triable issue[] of fact as to whether [the plaintiff] drove small vehicles for part of every workweek during the period covered by his complaint").

In these circumstances, I agree with BBUSA that Plaintiffs must drive small vehicles more than a *de minimis* amount during the relevant period to collect overtime under the Small Vehicle Exception.

8

*The De Minimis Standard*

As I have discussed, no legislature, agency, or Circuit has defined *de minimis* in this context. Accordingly, "[lower] courts have struggled with quantifying exactly *how much* work with small vehicles" triggers the Small Vehicle Exception. Moore v. Performance Pressure Pumping Servs., No. 15-435, 2017 WL 1501436, at *8 (W.D. Tex. Apr. 26, 2017); see also Byers, 2015 WL 5608287, at *8 n.11 ("Though nearly every court dealing with this issue uses the phrase, virtually none actually define what *de minimus* work on small vehicles would be or actually rely on the concept in their holdings, largely because all cases involving the small vehicle exception involve substantial work with small vehicles.").

BBUSA argues that I should apply the *de minimis* standard applied by the Third Circuit in *De Ascencio v. Tyson Foods, Inc.*, a FLSA case involving the Portal-to-Portal Act, to determine whether Plaintiffs' small vehicle usage was *de minimis*. (Def.'s Mem. Law Supp. Renewed Mot. Summ. J. 16–17; Def.'s Reply Mem. Law Further Supp. Mot. Summ. J. 11–12); 500 F.3d 361, 374 (3d Cir. 2007); see also Mayan, 2009 WL 3152136, at *9 n.12. The *De Ascencio* Court ruled that in determining whether time is *de minimis* under the Portal-to-Portal Act, courts should consider: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work." De Ascencio, 500 F.3d at 374 (quoting Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984)). BBUSA ignores, however, that the Third Circuit expressly rejected "administrative difficulties" as a reason not to apply the Small Vehicle Exception to the FLSA Motor Vehicle Exemption. See McMaster, 780 F.3d at 171 (rejecting argument that the Small Vehicle Exception should not apply to mixed-fleet drivers because it "would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes"). In these circumstances, I am not

9

persuaded that *De Ascencio* governs this case.

Plaintiffs argue that I should "apply the *de minimis* standard derived from Motor Carrier Exemption jurisprudence rather than . . . Portal-to-Portal Act jurisprudence." (Pl.'s Br. Opp'n to Def.'s Mot. Summ. J. 20–21.) In dealing with the Motor Carrier Exemption, the Third Circuit has held that under the Motor Carrier Act, employees are not exempt from overtime if their qualifying work with vehicles is *de minimis*: i.e., "where the continuing duties of the employee's job have no substantial direct effect on such safety of operation or where such safety-affecting activities are . . . trivial, casual, and insignificant." Resch v. Krapf's Coaches, Inc., 785 F.3d 869, 875 (3d Cir. 2015) (citing 29 C.F.R. § 782.2(b)(3)); see also Edwards v. Aramark Unif. & Career Apparel, LLC, No. 14-8482, 2016 WL 236241, at *12 (N.D. Ill. Jan. 19, 2016) (citing cases).

I agree with Plaintiffs that the *Resch* Court's application of the *de minimis* exception to the Motor Carrier Exemption is analogous here. Indeed, the Motor Carrier Exemption and the Small Vehicle Exception to that Exemption involve the same subject matter and similar statutory language. (See Pl.'s Br. Opp'n to Def.'s Mot. Summ. J. 23); 29 C.F.R. § 782.2 (requirements for motor carrier exemption); 122 Stat. 1572 § 306(c) (establishing the small vehicle exception); cf. Fed. Trade Comm'n v. Shire ViroPharma, Inc., 917 F.3d 147, 158 (3d Cir. 2019) (in interpreting statute, court may "look to other statutes pertaining to the same subject matter which contain similar terms' only if 'the ordinary meaning of a statute and the statute's legislative history fail to provide sufficient guidance to a term's meaning.'" (quoting Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 823 (3d Cir. 1999))). Moreover, several courts have relied on the Motor Carrier Exemption to craft a *de minimis* standard for its corresponding Small Vehicle Exception. See Moore, 2017 WL 1501436, at *9 ("Consistent with [the] caselaw on *de minimis* duties, work that is trivial, casual, and insignificant has no direct effect on the safety of operation of motor

vehicles and would not render an employee covered under the [Small Vehicle] Exception"); Byers, 2015 WL 5608287, at *8 n.11 ("Though [another case] involved application of the *de minimus* concept as to the issue of whether an individual's work on vehicles qualifying under the [Motor Carrier Exemption] was enough to bring that individual within the purview of the [Exemption] itself, its application to the small vehicle exception within the [Motor Carrier Exemption] is analogous."); see also Morgan, 2017 WL 11017230, at *15 (same).

In these circumstances, I agree with Plaintiffs that Motor Carrier Act case law is instructive and conclude that *de minimis* duties in this context are duties that have no direct effect on the safety of operation of motor vehicles or are otherwise trivial, casual, or insignificant.

*Applying the De Minimis Standard*

In the Motor Carrier context, the Supreme Court has ruled that drivers' vehicular duties were not *de minimis* where "3% to 4% of the carrier's total services" involved interstate commerce, and "performance of such services [wa]s shared indiscriminately" by drivers. Morris v. McComb, 332 U.S. 422, 423, 431 (1947). The Third Circuit similarly ruled that drivers' duties were not *de minimis* where drivers crossed state lines 1.3% of the time, some individual drivers drove interstate approximately 3% of the time, and interstate operations accounted for 1% to 9.7% of the employer's revenue. Resch, 785 F.3d at 870, 871 n.2, 875. In so ruling, the Third Circuit cited "other cases 'suggest[ing] that a company's interstate business is *de minimis* if it constitutes less than one percent of the overall trips taken by company the company," and suggested that drivers' vehicular duties might never be trivial because their work "more obviously and dramatically affects the safety of operation of the carrier during every moment that he is driving . . . ." Id. at 875 (citing Walters v. Am. Coach Lines of Miami, Inc., 575 F.3d 1221, 1228 (11th Cir. 2009); see also Edwards, 2016 WL 236241, at *12 ("[The *de minimis*] exception [to the Motor Carrier

11

Exemption] is generally applied when the interstate activities performed by the driver are 'infinitesimal' or—more concretely—less than 1%."); Turk v. Buffets Inc., 940 F. Supp. 1255, 1261–62 (N.D. Ill. 1996) ("In cases where the *de minimis* [exception to the Motor Carrier Exemption] was found to apply to drivers, the drivers spent less than one percent of their time in interstate travel" (citing cases)).  Recent cases involving the small vehicle exception have also hued closely to this 1% threshold.  Cf. Nelson v. Fedex Ground Package Sys., Inc., No. 18-1378, 2019 WL 1437765, at *3 (D. Colo. Feb. 8, 2019) (none of the cases "cited by the parties persuade the Court that use of a small vehicle less than one percent of the relevant period takes an employee out of the MCA exemption"); Berry v. Best Transp., No. 16-473, 2018 WL 6830097, at *6–7 (E.D. Mo. Dec. 27, 2018) ("[A] genuine issue of material fact exists as to whether plaintiff's operation of small vehicles[—during "slightly more than five percent of his tenure"—]was more than *de minimis*.").

Because it is undisputed that Plaintiffs drove small vehicles for 1% or more of their trips during the relevant period, I conclude that they have satisfied the *de minimis* threshold to collect overtime under the Small Vehicle Exception.  Accordingly, I will deny BBUSA's motion for summary judgment on this FLSA claim.

Although not argued, there appears to be a limitations issue in this case: although all Plaintiffs drove small vehicles during the maximum three-year limitations period, none of the Plaintiffs drove small vehicles during the default two-year limitations period.  (See Ex. H to Pl.'s Br. Opp'n to Def.'s Mot. Summ. J.); 29 U.S.C. § 255(a).  Because BBUSA has not moved for summary judgment on the limitations issue, and Plaintiffs have not addressed it, I, too, will not yet address it.

**B. New Jersey Wage and Hour Law**

In moving for summary judgment on Plaintiffs' FLSA claims, BBUSA asked me to dismiss Plaintiffs' NJWHL claim for lack of jurisdiction. (Def.'s Mem. Law Supp. Renewed Mot. Summ. J. 17–18); 28 U.S.C. § 1367. Because Plaintiffs have a viable FLSA claim, however, I may still exercise pendent jurisdiction over Plaintiffs' state-law claim. I will thus also deny BBUSA's request for summary judgment on this claim.

**V. CONCLUSION**

For the foregoing reasons, I will deny BBUSA's Renewed Motion for Summary Judgment.

\* \* \*

**AND NOW**, this 12th day of August, 2019, upon consideration of Defendant's Renewed Motion for Summary Judgment (Doc. No. 62), Plaintiffs' Response in Opposition (Doc. No. 66), and Defendant's Reply (Doc. No. 69), and all related submissions, it is hereby **ORDERED** that Defendant's Renewed Motion for Summary Judgment (Doc. No. 62) is **DENIED**.

**AND IT IS SO ORDERED**.

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.

August 12, 2019